IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NOLAN KINARD FLOYD, SR., <br><br> Plaintiff, <br><br> v. <br><br> WARDEN JEFFREY NINES, *et al*., <br><br> Defendants. | Civil Action No.:  PX-23-677 |

**MEMORANDUM OPINION**

Nolan Kinard Floyd, Sr., an inmate at North Branch Correctional Institution ("NBCI"), brings this retaliation action against Warden Jeffrey Nines and Chief of Security Ronald Stotler. ECF No. 5.  On December 4, 2023, Defendants moved to dismiss the Amended Complaint or, in the alternative, for summary judgment in their favor.  ECF No. 21.  The Court informed Floyd in writing and mailed to him at NBCI that pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), he retains the right to respond to the motion and that failure to respond could result in an adverse decision.  ECF No. 24.  Although Floyd filed a declaration that the Court received on the same day the *Roseboro* notice was mailed, Floyd thereafter did not respond to Defendants' motion. ECF No. 25.  This matter is now ripe and ready for review.  For the reasons discussed below, Defendants' motion will be granted.[2]

**I.   Background**

The Amended Complaint alleges that Nines and Stoler retaliated against Floyd after he complained about his placement in disciplinary segregation.  ECF No. 5 at 3; ECF No. 5-1 at 1. Floyd alleges that after he complained, his meals were contaminated with slimy substances, hair,

---

[2] Also pending is Defendants' Motion to Seal Exhibit H, which shall be granted.  ECF No. 23.

and bugs. ECF No. 5-1 at 1. Some of the meals made him dizzy or sick. *Id. See also* ECF No. 25. Floyd told Defendants about these problems but they ignored him. ECF No. 5-1 at 1.

The record reflects that Floyd filed one request for administrative remedy (the "ARP") on February 15, 2023, related to the provision of inedible food. ECF No. 21-4 at ¶¶ 1, 4 ( ARP NBCI-0181-23). Floyd was instructed to provide additional information which he did not do. *Id.* As a result, the ARP was dismissed. *Id.* Floyd did not appeal the dismissal or file a grievance with the Inmate Grievance Office ("IGO"). ECF No. 21-5 at ¶¶ 1, 2, 4; ECF No. 21-6 at ¶ 4.

**II.     Standard of Review**

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. The motion is properly treated under Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. CIV.A. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Defendants' motion included evidence outside the four corners of the Amended Complaint. Accordingly, Defendants placed Floyd on notice that they sought summary judgment. ECF No. 24. Floyd does not object to treating the motion as one for summary judgment, and so the Court will construe it as such. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

### III. Analysis

Defendants principally contend that summary judgment is proper because the record indisputably shows that Floyd failed to exhaust administrative remedies prior to filing suit. ECF No. 21-1 at 9-12. The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). And an action related to "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

A necessary precondition to suit is exhaustion of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). *See also Jones v. Bock*, 549 U.S. 199, 220 (2007). Although exhaustion is not jurisdictional under the PLRA, it is still required, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'… normally creates an obligation impervious to judicial discretion") (alteration in original)). The failure to exhaust administrative remedies is an affirmative defense that the Defendants must plead and prove. *See Bock*, 549 U.S. at 215–216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines…." *Woodford*, 548 U.S. at 88. This requirement is designed to ensure that the inmate uses "all steps that the agency holds out, and doing so properly," allowing the agency to address all issues on the merits prior to suit. *Id.* at 90. That said, the Court must not hold against the inmate any defects in exhaustion arising from "the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (finding that "the inmate

cannot be required to exhaust [administrative remedies] … when prison officials prevent inmates from using the administrative process").

The Maryland Department of Public Safety and Correctional Services ("DPSCS") implements an "administrative remedy procedure" as a means of "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), § 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to any "grievance against an official or employee of the Division of Correction [DOC] …."  C.S. § 10-206(a).  A "grievance" includes a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7).

A Maryland inmate may file a grievance with the IGO against any DOC official or employee.  *See* C.S. § 10-206(a).  When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.  Alternatively, where the particular corrections institution has its own grievance procedure that the IGO has approved, the inmate must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b).  NBCI maintains such a process.

The first step in the ARP process is to file the ARP with the institution's "managing official," COMAR 12.02.28.05(D)(1).  The ARP must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first learned of the incident or injury giving rise to the complaint, whichever is later.  *See* COMAR 12.02.28.09(B).

If the managing official denies or fails to respond timely, the inmate must appeal the decision to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).  If the Commissioner of Correction denies an appeal, the inmate must file a grievance within 30 days with the IGO. COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).  When filing a grievance with

5

the IGO, the inmate must include the initial request for administrative remedy, the warden's response to that request, the ARP appeal filed with the Commissioner of Correction, and the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing," which constitutes a final decision for purposes of exhaustion.  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B); C.S. § 10-207(b)(2)(ii).  If the IGO determines a hearing is necessary, an administrative law judge ("ALJ") with the Maryland Office of Administrative Hearings shall conduct the proceedings.  *See* C.S. § 10-208; COMAR 12.07.01.07–.08.  *See also* Md. Code Ann., State Gov't, § 10-206(a)(1).

If the ALJ denies all relief to the inmate, that decision is final for purposes of exhaustion.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed ALJ decision.  *See* C.S. §§ 10- 209(b)(2), (c); COMAR 12.07.01.10(B).  "A court may not consider an individual's grievance that is within the jurisdiction of the [IGO] or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" by law.  *See* C.S. §§ 10-201 through 10-210.

The record indisputably reflects that on February 15, 2023, Floyd filed one ARP concerning the alleged retaliatory food tampering.  Floyd took no other steps regarding that ARP.  Thus, Floyd has not exhausted available administrative remedies prior to filing suit.  Because the claims are not exhausted and the time for doing so has long passed, summary judgment must be granted in Defendants' favor.  The Court declines to address Defendants' alternative grounds for relief.

## IV. Conclusion

For the foregoing reasons, Defendants' motion, construed as one for summary judgment, is granted. A separate Order follows.

| | |
|---|---|
| 6/20/24 | /S/ |
| Date | Paula Xinis<br>United States District Judge |